UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GERALD GORDON,                                          :

                Petitioner,          :          13 Civ. 4401 (ALC) (AJP)

        -against-                    :          **REPORT AND RECOMMENDATION**

THOMAS LAVALLEY,                               :

               Respondent.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Andrew L. Carter, Jr., United States District Judge:**

        Petitioner Gerald Gordon seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2554

challenging his August 27, 2009 conviction, after a jury trial in Supreme Court, New York County,

of first and second degree robbery, and concurrent sentences of seventeen years imprisonment for

first degree robbery and fifteen years imprisonment for second degree robbery.  (Dkt. No. 2: Pet.

¶¶ 1-4; Dkt. No. 3: Gordon Br. at 1, 11.)

        Gordon's habeas petition asserts that his trial counsel was ineffective for not raising

as an affirmative defense to the first degree robbery charge that the gun was unloaded, allegedly

because he misunderstood the law.  (Pet. ¶ 12; see Gordon Br. at 14-36.)

        For the reasons set forth below, Gordon's habeas corpus petition should be <u>DENIED</u>

as unexhausted or in the alternative as meritless.

## FACTS

**The Trial**[1]

      On June 17, 2009, Gordon proceeded to trial by jury before Justice Wittner in Supreme Court, New York County.  (State 1st Dep't Br. 4.)[2]

### The Prosecution Case

      On April 3, 2006 at 12:45 a.m., Stefan David left his girlfriend's house and walked along 108th Street towards the subway on 110th Street and Lexington Avenue.  (Gordon 1st Dep't Br. at 11; State 1st Dep't Br. at 5.)  Two men on bicycles approached David, one of whom was Gordon.  (Gordon 1st Dep't Br. at 12; State 1st Dep't Br. at 5.)  Gordon dismounted, pointed a gun at David and cocked the weapon so that David heard it click.  (Gordon 1st Dep't Br. at 12; State 1st Dep't Br. at 5.)  Gordon demanded David's money, and David handed over his cell phone, iPod, $10 and a MetroCard.  (Gordon 1st Dep't Br. at 12; State 1st Dep't Br. at 6.)  David had a clear view of Gordon for several minutes and described him as having gold teeth and wearing an army fatigue Yankee cap with a charcoal black hooded sweatshirt.  (Gordon 1st Dep't Br. at 12; State 1st Dep't Br. at 5-6.)

      Gordon and his accomplice instructed David to walk towards Third Avenue and rode away ahead of him.  (Gordon 1st Dep't Br. at 12; State 1st Dep't Br. at 6.)  David flagged down a police car driving on Third Avenue and told Officer Matos and his partner that he had just been robbed at gunpoint.  (Gordon 1st Dep't Br. at 13; State 1st Dep't Br. at 6-7.)  David got into the

---

[1]    Gordon previously was convicted on December 4, 2006 following a jury trial before Justice McLaughlin but the conviction was reversed on February 19, 2009 because of an error during jury selection.  People v. Gordon, 59 A.D.3d 268, 873 N.Y.S.2d 578 (1st Dep't 2009).

[2]    The parties' First Department briefs are in Gordon's Appendix, Dkt. No. 4.  The trial transcript is in the second Appendix volume, Dkt. No. 5.

backseat of the police car which drove slowly up Third Avenue until David saw Gordon and his accomplice on 112th Street.  (Gordon 1st Dep't Br. at 13; State 1st Dep't Br. at 7.)  David believed this sighting occurred approximately 15 or 20 minutes after the robbery but Officer Matos testified that the time-frame was shorter.  (Gordon 1st Dep't Br. at 13.)

Officer Matos turned onto 112th Street and he and his partner instructed Gordon and his accomplice to freeze.  (Gordon 1st Dep't Br. at 13; State 1st Dep't Br. at 7.)  Gordon dropped his bicycle and ran into the Jefferson Houses projects on Third Avenue; his accomplice rode off on his bike and, despite a chase, was not apprehended.  (Gordon 1st Dep't Br. at 13; State 1st Dep't Br. at 7-8.)  Officer Ramos, who was on patrol in the Jefferson Houses, heard a radio transmission describing the two suspects and saw Gordon running into the courtyard.  (Gordon 1st Dep't Br. at 13-14; State 1st Dep't Br. at 8.)  From the roof, Officer Ramos saw that Gordon wore a dark hooded sweatshirt, a do-rag and a camouflage patterned baseball cap.  (Gordon 1st Dep't Br. at 14; State 1st Dep't Br. at 8.)  Officer Ramos saw Gordon's camouflage hat fall to the ground and saw Gordon look back at it without stopping.  (Gordon 1st Dep't Br. at 14; State 1st Dep't Br. at 8.)  Officer Ramos observed Gordon discard something that made a metallic clanging sound into an open garbage can in front of the building.  (Gordon 1st Dep't Br. at 14; State 1st Dep't Br. at 9.)  Gordon entered the building and ascended three flights of stairs; Officer Ramos stopped Gordon on the third floor landing.  (Gordon 1st Dep't Br. at 14; State 1st Dep't Br. at 9.)  Officer Ramos recognized  Gordon, who was sweating and out of breath, as the man he had seen from the roof.  (Gordon 1st Dep't Br. at 14; State 1st Dep't Br. at 9.)

Officer Ramos recovered a silver handgun from the garbage can where he had seen Gordon toss something that caused a metallic clanging sound.  (Gordon 1st Dep't Br. at 14; State 1st Dep't Br. at 9.)  The gun was not loaded and did not have a magazine or clip in it, not even an empty

one, but tests showed that the gun was operational and had been fired at some point in the past. (Gordon 1st Dep't Br. at 15-16; State 1st Dep't Br. at 10-11.)   Officer Ramos picked up the camouflaged Yankee cap which had fallen off of Gordon's head as he was running, and Gordon admitted that it was his.  (Gordon 1st Dep't Br. at 14-15; State 1st Dep't Br. at 9.)  David positively identified Gordon at the scene without hesitation.  (Gordon 1st Dep't Br. at 15; State 1st Dep't Br. at 9-11.)[3/]  David identified Gordon at trial as the robber with the gun.  (State 1st Dep't Br. 11.)

Only Gordon's cell phone and $2.52 was found in Gordon's possession.  (Gordon 1st Dep't Br. at 15; State 1st Dep't Br. at 10.)   Gordon made several inculpatory statements to the officers (which he denied at trial), including a statement that possession of an unloaded gun is just a misdemeanor, and that if his accomplice had been caught he would have shot the officers. (Gordon 1st Dep't Br. at 19; State 1st Dep't Br. at 13.)  Officer Matos testified that Gordon had gold teeth and that he watched Gordon remove them from his mouth, wrap them in tissue, and place them in his pocket.  (Gordon 1st Dep't Br. at 16; State 1st Dep't Br. at 10.)   Neither David's belongings nor the gold teeth were recovered.  (Gordon 1st Dep't Br. at 16; State 1st Dep't Br. at 10.)

**The Defense Case**

Gordon testified at trial that on April 2, 2006, he played basketball, then went home in the Bronx and left again at 11:30 p.m. or midnight to get a sandwich at a corner store.  (Gordon 1st Dep't Br. at 18; State 1st Dep't Br. at 12.)  Gordon rode his bicycle into Manhattan, was heading south on Third Avenue and cut into the Jefferson Houses when he saw a girl that he wanted to talk to.  (Gordon 1st Dep't Br. at 18; State 1st Dep't Br. at 12.)  Gordon dismounted his bike, threw the remains of his sandwich into the trash can and entered a building with the girl.  (Gordon 1st Dep't

---

[3/]    David also viewed a suspect stopped at 112th Street and First Avenue, but told police that he was not one of the robbers.  (Gordon 1st Dep't Br. at 15, State 1st Dep't Br. at 10 n.3.)

Br. at 18; State 1st Dep't Br. at 12.)  The girl left when she saw Officer Ramos, who asked Gordon to stop and questioned his presence in the building.  (Gordon 1st Dep't Br. at 18; State 1st Dep't Br. at 12.)

When he was arrested, Gordon was wearing a brown sweatshirt.  (State 1st Dep't Br. at 10.)  Gordon denied wearing a hat, a do-rag or gold teeth, denied the robbery and denied making any statements about a gun or an accomplice.  (Gordon 1st Dep't Br. at 18-20; State 1st Dep't Br. at 13-15.)  Gordon explained that a dentist gave him a retainer with yellow-tinted metal, but that he never wore or owned gold teeth.  (Gordon 1st Dep't Br. at 20-21; State 1st Dep't Br. at 14-15.)  A defense private investigator testified to the implausibility of reaching the housing development courtyard from 112th Street and Second Avenue as the police had testified.  (Gordon 1st Dep't Br. at 17; State 1st Dep't Br. at 13.)

### The Prosecution's Rebuttal Evidence

A New York Daily News reporter who interviewed Gordon for an unrelated article in 2006 testified that he remembered that Gordon had gold teeth.  (Gordon 1st Dep't Br. at 19; State 1st Dep't Br. at 13.)  Justice Edward J. McLaughlin, who had presided over Gordon's prior trial in November 2006, testified that he had noticed Gordon wearing gold teeth during part of the proceeding but after gold teeth were mentioned, Gordon no longer wore them in court.  (Gordon 1st Dep't Br. at 19-20; State 1st Dep't Br. at 13-14.)

### Defense Theme on Opening and Summation

The defense theme at trial was mis-identification.  In his opening statement, Gordon's counsel explained that the only description David gave to police was "black hoody and bluejeans," with no description of the robber's face and no mention of gold teeth.  (Tr. 27.)  Gordon's counsel also emphasized that the police did not voucher Gordon's camouflage Yankees hat or do-rag.  (Tr.

28.)  Gordon's counsel suggested that it was not credible that the police "gave . . . back to Mr. Gordon, this vital piece of evidence that links him to being the perpetrator of a robbery that happened blocks away." (Tr. 28.)  Gordon's counsel told the jury that Gordon would testify and they would "hear how accurate he is about his recollection of things."  (Tr. 29.)

On summation, Gordon's counsel began by referring to the "inconsistencies and contradictions that cast tremendous doubt" on the prosecution's case.  (Tr. 702.)  Counsel stressed "that there is reasonable doubt as to the accuracy of [David's] identification" of Gordon as the robber.  (Tr. 704; see generally Tr. 704-54.)  He pointed out that both David and the police described a black hoodie, but the one Gordon was wearing when arrested was brown.  (Tr. 706; see also Tr. 707-22, 746.)  Gordon's counsel also returned to a theme from his opening, about the camouflage hat that Officer Ramos testified about seeing from the roof fall off Gordon's head, and how unusual it was that the hat was not vouchered into evidence but returned to Gordon.  (Tr. 723-29, 743.)

With respect to the gun that was found on the scene, Gordon's counsel focused on David's weak identification of the weapon, having testified that it "resembled" the gun that was pointed at him, but that David did not correctly describe the gun's color.  (Tr. 756-62.)  Gordon's counsel did not discuss the fact that the weapon was unloaded.  (Tr. 756-62.)

**Defense Motion to Dismiss the First Degree Robbery Charge & Discussion of an Affirmative Defense**

When the prosecution rested, Gordon's counsel moved to dismiss the first degree robbery charge on the ground that the gun was not loaded and, even if Gordon had it in his possession during the robbery, there was no evidence that Gordon had discarded the magazine after the robbery.  (Tr. 489-90.)  The prosecution suggested that Gordon's counsel meant to assert an

affirmative defense instead of a motion to dismiss.  (Tr. 490.)  Justice Wittner denied the motion to

dismiss.  (Tr. 491.)

Justice Wittner asked whether Gordon's counsel wanted to assert the affirmative

defense:

| | |
|---|---|
| The Court: | Do you want the affirmative defense of rob two? |
| [Gordon's Counsel]: | Absolutely.<br>Wait a minute. |
| The Court: | In other words, that would be -- he would have to admit that he did it, but the gun wasn't loaded. |
| [Gordon's Counsel]: | I understand.<br>I don't think that would necessarily be applicable in this case. |
| The Court: | So, you don't want it? |
| [Gordon's Counsel]: | No. |

(Tr. 492.)  Consistent with the defense theme, Gordon's counsel requested an identification charge,

which Justice Wittner agreed to give.  (Tr. 492; see Tr. 817-20.)

**Jury Charge**

Justice Wittner instructed the jury that Gordon was charged with first and second

degree robbery.  (Tr. 820, 822.)  Justice Wittner explained to the jury that a person is guilty of first

degree robbery if he has (1) forcibly stolen property and (2) in the course of the commission of the

crime, displayed something that appears to be a firearm.  (Tr. 820-21.)  Justice Wittner explained

that someone is guilty of second degree robbery if he has (1) forcibly stolen property (2) with the

aid of another person present.  (Tr. 822-24.)  There was no instruction about an affirmative defense

if the weapon was unloaded.  (Gordon 1st Dep't Br. at 22; see Tr. 799-830.)

**Verdict and Sentence**

The jury convicted Gordon of first and second degree robbery. (Tr. 837-39.)

On August 27, 2009, Gordon was sentenced to concurrent terms of seventeen years imprisonment for first degree robbery and fifteen years for second degree robbery. (S. 32.)[4/]

**Gordon's Direct Appeal to the First Department**

Through counsel (the Center for Appellate Litigation), Gordon's direct appeal argued that: (1) the evidence was insufficient to prove first degree robbery because the gun was not loaded (Gordon 1st Dep't Br. at 28-35); (2) Gordon's trial counsel was ineffective for failing to assert as an affirmative defense to first degree robbery that the gun was not loaded (Gordon 1st Dep't Br. at 36-43); and (3) Gordon's sentence was excessive (Gordon 1st Dep't Br. at 44-47).

The State's opposition asserted that Gordon's guilt was proved beyond a reasonable doubt (State 1st Dep't Br. at 15-25), and that the ineffective counsel claim rested on matters outside the record, but in any event was sound trial strategy (State 1st Dep't Br. at 28-33).

On February 23, 2012, the First Department unanimously affirmed Gordon's conviction, holding:

> Defendant [Gordon] claims he was improperly convicted of first-degree robbery under Penal Law § 160.15(4) (displaying what appeared to be a firearm) because the police recovered an operable but unloaded pistol that the victim identified as having been displayed during the robbery. Defendant [Gordon] did not preserve this claim, and we decline to review it in the interest of justice. As an alternative holding, we reject it on the merits. We also find that the verdict was not against the weight of the evidence. Defendant [Gordon] now asserts that the weapon must have been unloaded at the time of the robbery, so that the affirmative defense set forth in Penal Law § 160.15(4) was established. However, at trial, defendant

---

[4/]     At sentencing, Gordon's counsel noted that it was a "one-witness ID case" and the gun was unloaded, "but the law allowed the robbery in the first degree charge to go forward in the absence of some technical admission by [Gordon] that he never made because he was asserting his innocence." (S. 16.)

[Gordon] testified and denied any involvement in the robbery, and <u>his defense was based entirely on issues of identification and credibility</u>. Although the court offered to charge the affirmative defense, defense counsel expressly declined that offer. Since the court's charge governs our assessment of both the sufficiency and the weight of the evidence, we generally have no occasion to consider a defense raised for the first time on appeal.

We note that the trial evidence permits an inference that defendant [Gordon] had an opportunity to separately discard the pistol and its ammunition. Accordingly, "[t]he evidence was consistent with the pistol having been loaded at the time of the crime, but unloaded at the time it was recovered."

Defendant[ Gordon's] <u>ineffective assistance of counsel claim is unreviewable on direct appeal because it involves matters outside the record concerning counsel's strategic reasons</u> for declining to pursue the affirmative defense. According to defendant [Gordon], the record reveals that counsel's waiver of the defense was not based on strategy but on a misunderstanding of the law. However, <u>the sparse record is inconclusive as to counsel's reasoning</u>.

To the extent the trial record permits review, we conclude that defendant [Gordon] received effective assistance under the state and federal standards. Defendant [Gordon] has not shown "the absence of strategic or other legitimate explanations" for the conduct challenged on appeal. Under all the circumstances, <u>it was a plausible strategy to focus exclusively on the issue of misidentification</u>, that is, whether defendant committed the robbery at all. In any event, defendant has not shown a reasonable probability that assertion of the affirmative defense would have resulted in a more favorable verdict.

We perceive no basis for reducing the sentence.

<u>People</u> v. <u>Gordon</u>, 92 A.D.3d 580, 580-81, 938 N.Y.S.2d 554, 554-55 (1st Dep't 2012) (emphasis added & citations omitted).

On May 15, 2012, the New York Court of Appeals denied leave to appeal. <u>People</u> v. <u>Gordon</u>, 19 N.Y.3d 864, 947 N.Y.S.2d 412 (2012).

**<u>Gordon's Federal Habeas Petition</u>**

On June 25, 2013, through counsel (the Center for Appellate Litigation), Gordon filed his present federal habeas corpus petition alleging counsel was ineffective for not raising as an

affirmative defense to the first degree robbery charge that the gun was not loaded, allegedly because counsel misunderstood the law.  (Dkt No. 2: Pet. ¶ 12; see Dkt. No. 3: Gordon Br. at 14-36.)

## ANALYSIS

### I.    THE AEDPA STANDARD

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners."  Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000).  The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[5/]

---

[5/]    See also, e.g., Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011); Knowles v. Mirzayance, 556 U.S. 111, 121, 129 S. Ct. 1411, 1418 (2009); Evans v. Fischer, 712 F.3d 125, 132 (2d Cir.), cert. denied, 134 S. Ct. 238 (2013); Portalatin v. Graham, 624 F.3d 69, 78-79 (2d Cir. 2010) (en banc), cert. denied, 131 S. Ct. 1691, 1693 (2011); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal
(continued...)

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 404-05, 120 S. Ct. at 1519.[6/]  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 412, 120 S. Ct. at 1523.[7/]  The relevant Supreme Court jurisprudence

---

[5/]    (...continued)
courts to grant the <u>habeas</u> petitions of state prisoners.'" (quoting <u>Lainfiesta</u> v. <u>Artuz</u>, 253 F.3d 151, 155 (2d Cir. 2001), <u>cert. denied</u>, 535 U.S. 1019, 122 S. Ct. 1611 (2002))).

[6/]    <u>Accord</u>, <u>e.g.</u>, <u>Evans</u> v. <u>Fischer</u>, 712 F.3d at 132-33; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d 175, 181 (2d Cir.), <u>cert. denied</u>, 540 U.S. 1091, 124 S. Ct. 962 (2003); <u>Jones</u> v. <u>Stinson</u>, 229 F.3d 112, 119 (2d Cir. 2000); <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d 113, 125 (2d Cir. 2000), <u>cert. denied</u>, 532 U.S. 943, 121 S. Ct. 1404 (2001); <u>Clark</u> v. <u>Stinson</u>, 214 F.3d 315, 320 (2d Cir. 2000), <u>cert. denied</u>, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[7/]    <u>Accord</u>, <u>e.g.</u>, <u>Marshall</u> v. <u>Rodgers</u>, 133 S. Ct. 1446, 1447 (2013) (per curiam); <u>Lafler</u> v. <u>Cooper</u>, 132 S. Ct. 1376, 1390 (2012) ("A decision is contrary to clearly established law if the state court 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases.'"); <u>Howes</u> v. <u>Fields</u>, 132 S. Ct. 1181, 1187 (2012) ("In this context, 'clearly established law' signifies 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'"); <u>Carey</u> v. <u>Musladin</u>, 549 U.S. 70, 77, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from this Court regarding [this issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. 652, 661, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. 63, 71, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); <u>Assadourian</u> v. <u>Brown</u>, 493 F. App'x 223, 225 (2d Cir. 2012) ("[H]abeas relief is only warranted where a state court unreasonably applies clearly established Supreme Court law . . . ."); <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79 ("To qualify as 'clearly established' for the purposes of federal habeas review, a rule of law must be embodied in the 'holdings, as opposed to the dicta,' of Supreme Court precedent."); <u>Georgison</u> v. <u>Donelli</u>, 588 F.3d 145, 153-54 (2d Cir. 2009); <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d 160, 164 (2d Cir.), <u>cert. denied</u>, 130 S. Ct. 642 (2009); <u>Hargett</u> v. <u>Giambruno</u>, 291 F. App'x 402, 403 (2d Cir. 2008); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d 587, 591 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 1047, 124 S. Ct. 2171 (2004); <u>Yung</u> v. <u>Walker</u>, 341 F.3d 104, 109-10 (2d Cir. 2003); <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d 1197, 1200 (2d Cir. 2002); <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d 36, 42 (2d (continued...)

is that in effect at the time of the state court's adjudication on the merits (in New York, usually the decision of the Appellate Division), not at the time of a subsequent decision (e.g., the New York Court of Appeals) denying leave to appeal.  Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011).

"That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d at 42.[8/] "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d at 110; accord, e.g., Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' It therefore cannot form the basis for habeas relief under AEDPA." (citation omitted)); DelValle v. Armstrong, 306 F.3d at 1200.[9/]

As to the "contrary to" clause:

A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .  A state-court decision will also be

---

[7/]     (...continued)
Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

[8/]     Accord, e.g., Marshall v. Rodgers, 133 S. Ct. at 1449 ("[T]he lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from this Court's cases can supply such law."); Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008), cert. denied, 555 U.S. 1176, 129 S. Ct. 1312 (2009).

[9/]     See also Marshall v. Rodgers, 133 S. Ct. at 1450-51 ("Although an appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent, it may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct." (citations omitted)).

contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[10/]

In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[11/]  However, "[t]he term 'unreasonable' is . . . difficult to define." Williams v. Taylor, 529 U.S. at 410, 120 S. Ct.

---

[10/]  Accord, e.g., Lafler v. Cooper, 132 S. Ct. at 1390; Cullen v. Pinholster, 131 S. Ct. at 1398; Knowles v. Mirzayance, 556 U.S. at 122, 129 S. Ct. at 1419 (The Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this [Supreme] Court." (quotation omitted)); Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438-39 (2005); Bell v. Cone, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 538 U.S. at 73-74, 123 S. Ct. at 1173-74; Evans v. Fischer, 712 F.3d at 132; Portalatin v. Graham, 624 F.3d at 79; Bierenbaum v. Graham, 607 F.3d 36, 47-48 (2d Cir. 2010), cert. denied, 131 S. Ct. 1693 (2011); Ortiz v. N.Y.S. Parole in Bronx, N.Y., 586 F.3d 149, 156 (2d Cir. 2009), cert. denied, 131 S. Ct. 320 (2010); Dunlap v. Burge, 583 F.3d at 164; Davis v. Grant, 532 F.3d at 140; Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006), cert. denied, 549 U.S. 1215, 127 S. Ct. 1267 (2007); Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir.), cert. denied, 546 U.S. 889, 126 S. Ct. 215 (2005); Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; DelValle v. Armstrong, 306 F.3d at 1200; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

[11/]  Accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1399; Waddington v. Sarausad, 555 U.S. 179, 190, 129 S. Ct. 823, 831 (2009); Brown v. Payton, 544 U.S. at 141, 125 S. Ct. at 1439; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2534-35; Evans v. Fischer, 712 F.3d at 133; Bierenbaum v. Graham, 607 F.3d at 48; Brisco v. Ercole, 565 F.3d 80, 87 (2d Cir.), cert. denied, 558 U.S. 1063, 130 S. Ct. 739 (2009); Jones v. West, 555 F.3d 90, 96 (2d Cir. 2009); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006), cert. denied, 549 U.S. 1257, 127 S. Ct. 1383 (2007); Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d at 181.

at 1522.  The Supreme Court made clear that "an <u>unreasonable</u> application of federal law is different

from an <u>incorrect</u> application of federal law."  <u>Id.</u>[12]  Rather, the issue is "whether the state court's

application of clearly established federal law was objectively unreasonable."  <u>Williams</u> v. <u>Taylor</u>,

529 U.S. at 409, 120 S. Ct. at 1521.[13]  "Objectively unreasonable" is different from "clear error."

<u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper

---

[12]  See also, e.g., <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1411; <u>Renico</u> v. <u>Lett</u>, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010); <u>Waddington</u> v. <u>Sarausad</u>, 555 U.S. at 190, 129 S. Ct. at 831; <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained: '[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (quoting <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002))); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175; <u>Watson</u> v. <u>Greene</u>, 640 F.3d 501, 508 (2d Cir.), <u>cert. denied</u>, 132 S. Ct. 335 (2011); <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 165-66 (A "federal court might agree with a petitioner that the relevant federal law should have been interpreted differently than the way it was interpreted by the state court yet still conclude that the state court's application of the federal law was not unreasonable."); <u>Brisco</u> v. <u>Ercole</u>, 565 F.3d at 87-88; <u>Jones</u> v. <u>West</u>, 555 F.3d at 96; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 219; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 124-25; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

[13]  Accord, e.g., <u>McDaniel</u> v. <u>Brown</u>, 558 U.S. 120, 132-33, 130 S. Ct. 665, 673 (2010); <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520-21, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853; <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1174-75; <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. at 25-27, 123 S. Ct. at 360-61; <u>Assadourian</u> v. <u>Brown</u>, 493 F. App'x at 224; <u>Watson</u> v. <u>Greene</u>, 640 F.3d at 508; <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79; <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 165; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d 515, 519 (2d Cir. 2006), <u>cert. denied</u>, 552 U.S. 836, 128 S. Ct. 75 (2007); <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 125; <u>Ryan</u> v. <u>Miller</u>, 303 F.3d 231, 245 (2d Cir. 2002); <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d at 128-29.

deference to state courts by conflating error (even clear error) with unreasonableness."). This is a

"'substantially higher threshold'" than incorrectness. Renico v. Lett, 559 U.S. at 773, 130 S. Ct. at

1862; accord, e.g., Knowles v. Mirzayance, 556 U.S. at 123, 129 S. Ct. at 1420.[14/] Federal habeas

relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state

court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011); accord, e.g. Nevada v. Jackson,

133 S. Ct. 1990, 1992 (2013); Metrish v. Lancaster, 133 S. Ct. 1781, 1786-87 (2013). "This is a

'difficult to meet' and 'highly deferential standard for evaluating state-court rulings.'"  Cullen v.

Pinholster, 131 S. Ct. at 1398 (citations omitted).[15/]

        "[T]he range of reasonable judgment can depend in part on the nature of the relevant

rule." Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2149.[16/] "Even if the state court issued

---

[14/]    However, the Second Circuit has explained "that while '[s]ome increment of incorrectness
beyond error is required . . . the increment need not be great; otherwise, habeas relief would
be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"
Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.
2000)); accord, e.g., Cornell v. Kirkpatrick, 665 F.3d 369, 375 (2d Cir. 2011); Brisco v.
Ercole, 565 F.3d at 88; Jones v. West, 555 F.3d at 96; Brown v. Alexander, 543 F.3d 94, 100
(2d Cir. 2008) ("[W]e have observed that the 'unreasonable application' standard 'falls
somewhere between merely erroneous and unreasonable to all reasonable jurists.'"); Davis
v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68;
Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387
F.3d 197, 200-01; Yung v. Walker, 341 F.3d at 110; Eze v. Senkowski, 321 F.3d at 125;
Ryan v. Miller, 303 F.3d at 245; Loliscio v. Goord, 263 F.3d at 184.

[15/]    Accord, e.g., Burt v. Titlow, 134 S. Ct. 10, 16 (2013) ("AEDPA erects a formidable barrier
to federal habeas relief for prisoners whose claims have been adjudicated in state court.");
Metrish, v. Lancaster, 133 S. Ct. at 1787; Greene v. Fisher, 132 S. Ct. at 43; Jean v. Greene,
532 F. App'x 744, 749 (2d Cir. 2013); Santone v. Fischer, 689 F.3d 138, 147 (2d Cir.), cert.
denied, 133 S. Ct. 390 (2012).

[16/]    The Supreme Court explained:

        [T]he range of reasonable judgment can depend in part on the nature of the relevant
        rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule
                                                                          (continued...)

a decision 'contrary to' clearly established Supreme Court law, a petitioner 'cannot obtain relief . . . unless application of a <u>correct</u> interpretation of that [Supreme Court] decision leads to the conclusion that his rights were violated.'" <u>Cousin</u> v. <u>Bennett</u>, 511 F.3d 334, 339 (2d Cir.), <u>cert. denied</u>, 553 U.S. 1096, 128 S. Ct. 2910 (2008) (citation omitted).

   Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 45.[17]

---

[16]  (...continued)

    may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

  <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2149; <u>accord</u>, <u>e.g.</u>, <u>Nevada</u> v. <u>Jackson</u>, 133 S. Ct. at 1994; <u>Parker</u> v. <u>Matthews</u>, 132 S. Ct. at 2155 ("Particularly because the <u>Darden</u> standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations,' the Sixth Circuit had no warrant to set aside the Kentucky Supreme Court's conclusion." (citation omitted)); <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 786; <u>Renico</u> v. <u>Lett</u>, 559 U.S. at 776, 130 S. Ct. at 1864; <u>Knowles</u> v. <u>Mirzayance</u>, 556 U.S. at 123, 129 S. Ct. at 1420 (Where the Supreme Court "standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."); <u>Watson</u> v. <u>Greene</u>, 640 F.3d at 508-09; <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79; <u>Ortiz</u> v. <u>N.Y.S. Parole in Bronx, N.Y.</u>, 586 F.3d at 157; <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 166; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243.

[17]  <u>Accord</u>, <u>e.g.</u>, <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d at 47-48; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140-41; <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d at 591; <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 109; <u>see</u> <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision. There is force to this argument. Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law. At the same time, the
                     (continued...)

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." Yung v. Walker, 341 F.3d at 109; accord, e.g., Hardy v. Cross, 132 S. Ct. 490, 491 (2011); Cullen v. Pinholster, 131 S. Ct. at 1398; Felkner v. Jackson, 131 S. Ct. 1305, 1307 (2011) (per curiam) ("On federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" (citations omitted)).[18/] "[I]t is the petitioner's burden to demonstrate that the state court applied the relevant clearly established law to th[e] record in an unreasonable manner." Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009); accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1398 ("The petitioner carries the burden of proof."); Georgison v. Donelli, 588 F.3d at 154.

As the Supreme Court explained:

> If this standard is difficult to meet, that is because it was meant to be. . . . [§ 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decisions conflict with [the Supreme] Court's precedents.  It goes no further. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 131 S. Ct. at 786-87; accord, Burt v. Titlow, 134 S. Ct. at 16.

---

[17/]   (...continued)
difference between applying a rule and extending it is not always clear.  Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." (citations omitted)).

[18/]   See also, e.g., Renico v. Lett, 559 U.S. at 773, 130 S. Ct. at 1862; Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Evans v. Fischer, 712 F.3d at 132 ("We focus on the state appellate court's decision and, for issues adjudicated on the merits in state court, we apply a 'highly deferential standard for evaluating state-court rulings.'"); Mosby v. Senkowski, 470 F.3d at 519.

18

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies.

> [D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.  And as this Court has observed, a state court need not cite or even be aware of [Supreme Court] cases under § 2254(d).  Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.

Harrington v. Richter, 131 S. Ct. at 784 (citations to Sellan v. Kuhlman, 261 F.3d at 312, & other cases omitted); accord, e.g., Johnson v. Williams, 133 S. Ct. 1088, 1094 (2013); Cullen v. Pinholster, 131 S. Ct. at 1402; Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (state court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them"); Grayton v. Ercole, 691 F.3d 165, 174 (2d Cir. 2012) ("Where, as here, 'a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.'"); Wilson v. Mazzuca, 570 F.3d 490, 499 (2d Cir. 2009) ("Where, as here, 'a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent.'").[19]  "'[A] habeas

---

[19]    See also, e.g., Grayton v. Ercole, 691 F.3d at 169-70 & n.3; Wade v. Herbert, 391 F.3d 135, 140, 142 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover, "[i]f any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected (continued...)

court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.'" Cullen v. Pinholster, 131 S. Ct. at 1402.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 131 S. Ct. at 784-85.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. at 1398; accord, e.g., Ryan v. Gonzales, 133 S. Ct. 696, 708 (2013); Greene v. Fisher, 132 S. Ct. at 44.

Finally, in appropriate circumstances, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); accord, e.g., Burt v. Titlow, 134 S. Ct. at 15; Williams v. Ercole, 486 F. App'x 208, 211 (2d Cir.), cert. denied, 133 S. Ct. 635 (2012); Bierenbaum v. Graham, 607 F.3d at 48; Lynn v. Bliden, 443 F.3d at 246-47; Rosa

---

[19]/   (...continued)
defendants' remaining claims,'" AEDPA deference applies), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition-the word 'denied'-triggered AEDPA deference.").

v. McCray, 396 F.3d at 220.  "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'"  Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Burt v. Titlow, 134 S. Ct. at 15; Williams v. Ercole, 486 F. App'x at 211; Bierenbaum v. Graham, 607 F.3d at 48 ("A state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence."); Brown v. Alexander, 543 F.3d at 100; Lynn v. Bliden, 443 F.3d at 246-47.

## II.   GORDON'S INEFFECTIVE ASSISTANCE CLAIM IS UNEXHAUSTED

### A.   The Exhaustion Doctrine

Section 2254 codifies the exhaustion requirement, providing that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -- (A) the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).[20]  As the Supreme Court has made clear, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."  Rose v. Lundy, 455 U.S. at 518, 102 S. Ct. at 1203; accord, e.g., O'Sullivan v. Boerckel,  526 U.S. at 845, 119 S. Ct. at 1732.

---

[20]   See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Rose v. Lundy, 455 U.S. 509, 515-16, 102 S. Ct. 1198, 1201 (1982) ("The exhaustion doctrine existed long before its codification by Congress in 1948" in 28 U.S.C. § 2254.); Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971); Abuzaid v. Mattox, 726 F.3d 311, 321 (2d Cir. 2013) ("§ 2254(b)(1)(A) prohibits federal courts from granting relief to an applicant who has not 'exhausted the remedies available in the courts of the State.'  28 U.S.C. § 2254(b)(1)(A) (1996).  But § 2254(b)(2) authorized federal courts to deny the petition, regardless of whether the applicant exhausted his state court remedies."); Jimenez v. Walker, 458 F.3d 130, 148 (2d Cir. 2006), cert. denied, 549 U.S. 1133, 127 S. Ct. 976 (2007); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995); Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990); Daye v. Attorney Gen., 696 F.2d 186, 190-94 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048, 104 S. Ct. 723 (1984).

The Second Circuit determines whether a claim has been exhausted by applying a two-step analysis:

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts. . . . Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

Diaz v. Coombe, 97 Civ. 1621, 1997 WL 529608 at *3 (S.D.N.Y. June 12, 1997) (Mukasey, D.J. & Peck, M.J.) (quoting Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981)); accord, e.g., O'Sullivan v. Boerckel, 526 U.S. at 843-48, 119 S. Ct. at 1732-34.

"The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney Gen., 696 F.2d at 191.[21/] The Second Circuit has held that a federal habeas petitioner must have alerted the state appellate court that a federal constitutional claim is at issue. E.g., Cox v. Miller, 296 F.3d at 99; Jones v. Vacco, 126 F.3d at 413-14; Grady v. LeFevre, 846 F.2d 862, 864 (2d Cir. 1988); Petrucelli v. Coombe, 735 F.2d 684, 688-89 (2d Cir. 1984); Daye v. Attorney Gen., 696 F.2d at 191.  In Daye, the Second Circuit en banc stated:

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

---

[21/]   Accord, e.g., O'Sullivan v. Boerckel, 526 U.S. at 844, 119 S. Ct. at 1732; Picard v. Connor, 404 U.S. at 275-76, 92 S. Ct. at 512; Jones v. Keane, 329 F.3d 290, 294-95 (2d Cir.), cert. denied, 540 U.S. 1046, 124 S. Ct. 804 (2003); Cox v. Miller, 296 F.3d 89, 99 (2d Cir. 2002), cert. denied, 537 U.S. 1192, 123 S. Ct. 1273 (2003); Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997).

Daye v. Attorney Gen., 696 F.2d at 194.[22/]

The Supreme Court has confirmed the long-held view of the Second Circuit that "a state prisoner must present his claims to a state supreme [i.e., highest] court in a petition for discretionary review in order to satisfy the exhaustion requirement."  O'Sullivan v. Boerckel, 526 U.S. at 839-40, 119 S. Ct. at 173.[23/]

### B.   Application to Gordon's Claim

The New York Court of Appeals has stated that "in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of [trial] counsel be bottomed on an evidentiary exploration by collateral or postconviction proceeding brought under CPL 440.10," since ineffectiveness of counsel is usually not demonstrable on the trial record.

---

[22/]    Accord, e.g., Smith v. Duncan, 411 F.3d 340, 348 (2d Cir. 2005); Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005); Rosa v. McCray, 396 F.3d 210, 217-18 (2d Cir.), cert. denied, 546 U.S. 889, 126 S. Ct. 215 (2005); St. Helen v. Senkowski, 374 F.3d 181, 182-83 (2d Cir. 2004), cert. denied, 543 U.S. 1058, 125 S. Ct. 871 (2005); Cox v. Miller, 296 F.3d at 99; Ramirez v. Attorney Gen., 280 F.3d 87, 95 (2d Cir. 2001); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 124 (2d Cir. 1995), cert. denied, 520 U.S. 1106, 117 S. Ct. 1112 (1997); Grady v. LeFevre, 846 F.2d at 864; Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir. 1986); Petrucelli v. Coombe, 735 F.2d at 688.

[23/]    Accord, e.g., Rosa v. McCray, 396 F.3d at 217; Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir.), cert. denied, 544 U.S. 1025, 125 S. Ct. 1996 (2005); Calderon v. Keane, 115 F. App'x 455, 457 (2d Cir. 2004); Cotto v. Herbert, 331 F.3d 217, 237 (2d Cir. 2003); Ramirez v. Attorney Gen., 280 F.3d at 94; Jordan v. LeFevre, 206 F.3d 196, 198 (2d Cir. 2000); Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir.), cert. denied, 531 U.S. 819, 121 S. Ct. 59 (2000); Bossett v. Walker, 41 F.3d at 828 ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'"); Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991) ("a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition"); Pesina v. Johnson, 913 F.2d at 54 ("We have held that the exhaustion requirement mandates that federal claims be presented to the highest court of the pertinent state before a federal court may consider the petition," citing Daye); Daye v. Attorney Gen., 696 F.2d at 191 n.3 ("Exhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had.").

People v. Brown, 45 N.Y.2d 852, 853-54, 410 N.Y.S.2d 287, 287 (1978); see, e.g., Caballero v.
Keane, 42 F.3d 738, 740 (2d Cir. 1994) (claim based on "a matter clearly outside of the trial record--
allegations that his attorney conducted his defense under the influence of drugs" should be raised
in a § 440.10 motion, which is the "preferred avenue for inadequate representation claims in New
York"); Smith v. Fischer, 07 Civ. 2966, 2013 WL 357604 at *7 (S.D.N.Y. Jan. 25, 2013) ("[I]f a
'defendant's ineffective assistance of counsel claim turns on matters outside the record, . . . it is not
reviewable on direct appeal and would require a further record to be developed by way of a C.P.L.
§ 440.10 motion.'"); Pollard v. Gonyea, 11 Civ. 5712, 2012 WL 2389663 at *8 (S.D.N.Y. Mar. 14,
2012); Redd v. Quinones, 98 Civ. 2604, 1998 WL 702334, at *4 (S.D.N.Y. Oct. 7, 1998); Walker
v. Miller, 959 F. Supp. 638, 643-44 (S.D.N.Y. 1997) (McKenna, D.J. & Peck, M.J.) (finding that
state court remedies were not exhausted where § 440.10 motion did not advance all of the ineffective
assistance of trial counsel allegations raised in habeas petitions); Ehinger v. Miller, 928 F. Supp.
291, 294 (S.D.N.Y. 1996) (Mukasey, D.J. & Peck, M.J.) ("Ineffective assistance of trial counsel
motions, on the other hand, ordinarily are made by a CPL § 440.10 motion before the trial court, or
direct appeal where trial counsel's alleged incompetence could be determined from the existing
record."); Mercado v. Senkowski, 736 F. Supp. 28, 29 (E.D.N.Y. 1990); Walker v. Dalsheim, 669
F. Supp. 68, 70 (S.D.N.Y. 1987) ("The proper procedural vehicle under New York law for raising
a claim of ineffective assistance of trial counsel is generally not a direct appeal but a motion to the
trial court to vacate the judgment under New York Criminal Procedure Law Section 440.10.  This
is so because normally the appellate court has no basis upon which it would be able to consider the

substance of such a claim until a record of the relevant facts has been made at the trial court level.").[24/]

        Gordon argues that the colloquy between Gordon's counsel and Justice Wittner (see page 7 above) clearly establishes on the record that Gordon's counsel misunderstood the law, and therefore a motion pursuant to C.P.L. § 440.10 was unnecessary.  (Dkt. No. 3: Gordon Br. at 21-28; Dkt. No. 13: Gordon Reply Br. at 3-4).  When the basis for the ineffective assistance claim is

---

[24/]    See also, e.g., People v. Howard, 2013 N.Y. Slip Op. 07824, 2013 WL 6164494 at *7 (N.Y. 2013) ("[D]efendants may raise their ineffective assistance claims in CPL 440.10 motions."); People v. Haffiz, 19 N.Y.3d 883, 885, 951 N.Y.S.2d 690, 691 (2012) ("[I]n this case the claim is predicated on . . . facts not found in the record on appeal.  The claim should be raised in a post conviction application under CPL article 440, where the basis of the claim may be fully developed."); People v. Gravino, 14 N.Y.3d 546, 558, 902 N.Y.S.2d 851, 858 (2010) (Defendant's "claim of ineffective assistance of counsel brings up matters not apparent from the face of the record, which are therefore properly fleshed out by . . . a CPL 440.10 motion rather than raised on direct appeal."); People v. Rivera, 71 N.Y.2d 705, 709, 530 N.Y.S.2d 52, 55 (1988);  People v. Love, 57 N.Y.2d 998, 1000, 457 N.Y.S.2d 238, 239 (1982); People v. Brown, 28 N.Y.2d 282, 286-87, 321 N.Y.S.2d 573, 577 (1971); People v. Ross, 113 A.D.3d 877, 877, 979 N.Y.S.2d 160, 161 (2d Dep't 2014) ("Since the defendant's claim of ineffective assistance . . . cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety."); People v. Acevedo, 112 A.D.3d 454, 455, 976 N.Y.S.2d 82, 82 (1st Dep't 2013); People v. Barton, 110 A.D.3d 1089, 1089, 973 N.Y.S.2d 760, 762-63 (2d Dep't 2013); People v. Breazil, 110 A.D.3d 913, 913, 973 N.Y.S.2d 299, 301 (2d Dep't), appeal denied, 22 N.Y.3d, --- N.Y.S.2d ---- (2013); People v. Edmunson, 109 A.D.3d 621, 623, 970 N.Y.S.2d 635, 638 (2d Dep't 2013); People v. Howard, 109 A.D.3d 487, 488, 970 N.Y.S.2d 86, 88 (2d Dep't), appeal denied, 22 N.Y.3d 996, --- N.Y.S.2d ---- (2013); People v. Maxwell, 89 A.D.3d 1108, 1109, 933 N.Y.S.2d 386, 388 (2d Dep't 2011); People v. Rosa, 257 A.D.2d 471, 471-72, 682 N.Y.S.2d 845, 845 (1st Dep't 1999); People v. Figueroa, 254 A.D.2d 226, 226, 679 N.Y.S.2d 304, 304 (1st Dep't 1998) ("Since defendant failed to raise his contention of ineffective assistance of counsel in his motion to vacate the judgment of conviction pursuant to CPL 440.10, the claim is not reviewable on direct appeal since it is based on facts dehors the record and trial counsel has had no opportunity to explain her trial tactics."); People v. Arroyo, 254 A.D.2d 55, 56, 678 N.Y.S.2d 722, 722 (1st Dep't 1998); People v. Steele, 135 A.D.2d 673, 673, 522 N.Y.S.2d 248, 249 (2d Dep't 1987) ("As we have previously held, the appropriate vehicle by which to obtain review of the defendant's claim of ineffective assistance of counsel is through the commencement of a proceeding pursuant to CPL article 440.").

"particularly well-established in the trial record," direct appeal is appropriate.  See, e.g., Sweet v. Bennett, 353 F.3d 135, 137, 140 (2d Cir. 2003); Chatmon v. Mance, 07 Civ. 9655, 2011 WL 5023243 at *9-10 (S.D.N.Y. Oct. 20, 2011).  Gordon's ineffective assistance of counsel claim, however, is not "particularly well-established in the trial record."  Gordon's trial counsel's alleged misunderstanding of the law with respect to the affirmative defense cannot be determined from the short exchange wherein Gordon's trial counsel decided to withdraw the affirmative defense.  (See page 7 above.)  Indeed, in denying Gordon's direct appeal, the First Department held that the trial record was "inconclusive" as to Gordon's counsel's strategic reasons for declining to seek the affirmative defense.  People v. Gordon, 92 A.D.3d 580, 581, 938 N.Y.S.2d 554, 554 (1st Dep't 2012).  If a reviewing court cannot conclude whether counsel was ineffective "without the benefit of additional background facts," a motion pursuant to C.P.L. § 440.10 must be brought.  People v. Love, 57 N.Y.2d 998, 1000, 457 N.Y.S.2d 238, 239 (1982).[25/]

New York law allows a petitioner to bring a C.P.L. § 440.10 motion "[a]t any time after the entry of a judgment."  N.Y. C.P.L. § 440.10(1).  Since Gordon can still bring a § 440.10 motion, as he concedes (Gordon Reply Br. at 4), his habeas claim should be dismissed for his failure to properly exhaust the claim.  E.g., Harris v. Phillips, 2013 WL 1290790 at *6-7; Johnson v. Kirkpatrick, 2011 WL 3328643 at *12; Roberts v. Walsh, 09 Civ. 1516, 2010 WL 1837827 at *5 (S.D.N.Y. May 6, 2010); Simms v. Moscicki, 06 Civ. 2056, 2006 WL 2466811 at *10 (S.D.N.Y.

---

[25/]    See, e.g., Waiters v. Lee, No. 13-CV-3636, 2013 WL 6579616 at *7 (E.D.N.Y. Nov. 5, 2013); Harris v. Phillips, No. 05-CV-2870, 2013 WL 1290790 at *5 (E.D.N.Y. Mar. 28, 2013); Lewis v. Lee, 11 Civ. 7119, 2012 WL 6700045 at *5 (S.D.N.Y. Dec. 19, 2012); Johnson v. Kirkpatrick, 11 Civ. 1089, 2011 WL 3328643 at *12 (S.D.N.Y. Aug. 3, 2011) (Peck, M.J.) (citing cases); Bolus v. Portuondo, No. 01-CV-1189, 2007 WL 2846912 at *4 (N.D.N.Y. Sept. 26, 2007); Polanco v. Ercole, 06 Civ. 1721, 2007 WL 2192054 at *7 (S.D.N.Y. July 31, 2007); see also cases cited at pages 22-24 above.

Aug. 25, 2006) (Peck, M.J.), report & rec. adopted, 2007 WL 162295 (S.D.N.Y. Jan. 19, 2007);

Naranjo v. Filion, 02 Civ. 5449, 2003 WL 1900867 at *8 (S.D.N.Y. Apr. 16, 2003) (Peck. M.J.);

Hernandez v. Lord, 00 Civ. 2306, 2000 WL 1010975 at *3 (S.D.N.Y. July 21, 2000) (Peck, M.J.).

       While Gordon argues that "there is no reason to believe that [Gordon's trial counsel]

would have anything to add by way of affidavit or testimony during the course of a 440 proceeding"

(Gordon Reply Br. at 4), that is incorrect.  Gordon's trial counsel could clarify whether he declined

the affirmative defense as a matter of trial strategy or because he misunderstood the law.  While

nobody likes to admit to a mistake, good defense lawyers are willing to admit their mistakes in § 440

submissions.[26/]  In any event, Gordon's trial counsel should not be assumed to have been mistaken

without the opportunity to respond to the assertion.[27/]

       The Second Circuit in Zarvela v. Artuz, 254 F.3d 374, 380-82 (2d Cir.), cert. denied,

534 U.S. 1015, 122 S. Ct. 506 (2001), instructed the district courts on how to handle a "mixed"

habeas petition containing exhausted and unexhausted claims in light of the AEDPA's one year

statute of limitations:  the district court should "dismiss[] only the unexhausted claims.  As to the

unexhausted claims, we think a district court should exercise discretion either to stay further

---

[26/]    See, e.g., Rosario v. Ercole, 601 F.3d 118, 130 (2d Cir. 2010) (Straub, J., concurring in part
    & dissenting in part) ("To be clear, neither [defense attorney] claim[s] that the failure to
    conduct this investigation was strategic; they admit it was a mistake."), cert. denied, 131 S.
    Ct. 2901 (2011); Green v. Lee, No. 12-CV-5796, --- F. Supp. 2d ----, 2013 WL 4052830 at
    *18 (E.D.N.Y. Aug. 12, 2013) ("To be clear, the trial counsel does not assert that the failure
    to conduct this investigation was strategic; he admits it was a mistake."); see also Kovacs
    v. United States, No. 13-0209, --- F.3d ----, 2014 WL 803089 at *6 (2d Cir. Mar. 3, 2014).

[27/]    Cf. e.g., Eze v. Senkowski, 321 F.3d 110, 136 (2d Cir. 2003) ("'[A] district court facing the
    question of constitutional ineffectiveness of counsel should, except in the highly unusual
    circumstances, offer the assertedly ineffective attorney an opportunity to be heard and to
    present evidence, in the form of live testimony, affidavits, or briefs.'" (quoting Sparman v.
    Edwards, 154 F.3d 51, 52 (2d. Cir. 1998) (per curiam)).

proceedings on the remaining portion of the petition or to dismiss the petition in its entirety." Zarvela v. Artuz, 254 F.3d at 380.  This case involves a different situation than Zarvela: Gordon's petition contains no exhausted claims, only a single unexhausted claim.  (Dkt. No. 2: Pet. ¶ 12.)  There is no exhausted claim to stay while dismissing an unexhausted claim.  Because Gordon failed to exhaust his single habeas claim, this Court has no basis to retain jurisdiction over his unexhausted habeas petition, which should be dismissed.  See, e.g., Baity v. McCary, 02 Civ. 1817, 2002 WL 31433293 at *2 (S.D.N.Y. Oct. 31, 2002) (Peck, M.J.) (& cases cited therein); see also, e.g., Kevilly v. Connell, No. 09 CV 270, 2009 WL 2868219 at *5 (N.D.N.Y. Aug. 31, 2009); Polanco v. Ercole, 2007 WL 2192054 at *8; Shomo v. Maher, 04 Civ. 4149, 2005 WL 743156 at *7 n.12 (S.D.N.Y. Mar. 31, 2005); Hust v. Costello, 329 F. Supp. 2d 377, 380 (E.D.N.Y. Aug. 16, 2004); Carpenter v. Reynolds, 212 F. Supp. 2d 94, 98 (E.D.N.Y. July 27, 2002).

## III.    IN ANY EVENT, ON THE CURRENT RECORD, GORDON'S INEFFECTIVE ASSISTANCE CLAIM SHOULD BE DENIED AS MERITLESS

As noted above, § 2254(b)(2) allows the Court to deny a habeas claim even if it is not exhausted in state court.  (See page 20 & n.20 above.)  For the reasons discussed below, on the trial record before the First Department and this Court, the Court in the alternative should deny Gordon's claim on the merits.

### A.    Legal Principles

#### 1.    The Strickland v. Washington Standard on Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court announced a two-part test to determine if counsel's assistance was ineffective:  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment."  <u>Id.</u> at 687, 104 S. Ct. at 2064.[28/]  This performance is to be judged by an objective

standard of reasonableness.  <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 688, 104 S. Ct. at 2064.[29/]  The

"'purpose of the effective assistance guarantee of the Sixth Amendment is . . . simply to ensure that

criminal defendants receive a fair trial.'  Thus, '[t]he benchmark for judging any claim of

ineffectiveness must be whether counsel's conduct <u>so undermined</u> the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result.'"  <u>Cullen</u> v.

<u>Pinholster</u>, 131 S. Ct. 1388, 1403 (2011) (quoting <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 686, 689,

104 S. Ct. at 2063, 2065 (citation omitted)).

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . .  [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

<u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 689, 104 S. Ct. at 2065 (citation omitted).[30/]  Ineffective

assistance claims "are quite often the law's equivalent of 'buyer's remorse' or 'Monday morning

---

[28/]   Accord, <u>e.g.</u>, <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. 770, 787 (2011); <u>Premo</u> v. <u>Moore</u>, 131 S. Ct. 733, 739 (2011); <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003); <u>Bell</u> v. <u>Miller</u>, 500 F.3d 149, 156-57 (2d Cir. 2007); <u>Henry</u> v. <u>Poole</u>, 409 F.3d 48, 62-63 (2d Cir. 2005), <u>cert. denied</u>, 547 U.S. 1040, 126 S. Ct. 1622 (2006).

[29/]   Accord, <u>e.g.</u>, <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 787; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 521, 123 S. Ct. at 2535; <u>Bell</u> v. <u>Cone</u>, 535 U.S. 685, 695, 122 S. Ct. 1843, 1850 (2002); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 63.

[30/]   Accord, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403; <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 787-88; <u>Bell</u> v. <u>Cone</u>, 535 U.S. at 698, 122 S. Ct. at 1852; <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d 36, 50-51 (2d Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 1693 (2011); <u>Bell</u> v. <u>Miller</u>, 500 F.3d at 156-57; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 63; <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d 78, 95 (2d Cir. 2001); <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d 303, 315 (2d Cir. 2001).

quarterbacking' . . . . Decisions by criminal defense counsel are often choices among bad alternatives . . . ." <u>Mui</u> v. <u>United States</u>, 614 F.3d 50, 57 (2d Cir. 2010);  <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403; <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 788 ("It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'").  Petitioner's "burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment." <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 787 (quotations omitted).

Second, the defendant must show prejudice from counsel's performance.  <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 687, 104 S. Ct. at 2064; <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403.  The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 695, 104 S. Ct. at 2068-69.  Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694, 104 S. Ct. at 2068.[31/]

---

[31/]  See also, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403; <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 787; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 534, 123 S. Ct. at 2542; <u>Bell</u> v. <u>Cone</u>, 535 U.S. at 695, 122 S. Ct. at 1850; <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d 515, 519 (2d Cir. 2006), <u>cert. denied</u>, 552 U.S. 836, 128 S. Ct. 75 (2007); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 63-64; <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d at 95; <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d at 315; <u>DeLuca</u> v. <u>Lord</u>, 77 F.3d 578, 584 (2d Cir.), <u>cert. denied</u>, 519 U.S. 824, 117 S. Ct. 83 (1996).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 694, 104 S. Ct. at 2068; <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403; <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 787; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 534, 123 S. Ct. at 2542;  <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d at 51.  The phrase "reasonable probability," despite its language, should not be confused with "'more likely than not.'" <u>Strickler</u> v. <u>Greene</u>, 527 U.S. 263, 289-91, 119 S. Ct. 1936, 1952-53 (1999); <u>accord</u>, <u>e.g.</u>, <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 792; <u>Kyles</u> v. <u>Whitley</u>, 514 U.S. 419, 434, 115 S. Ct. 1555, 1565-66 (1995); <u>Nix</u> v. <u>Whiteside</u>, 475 U.S. 157, 175, 106 S. Ct.
(continued...)

The Supreme Court has counseled that these principles "do not establish mechanical rules."  Strickland v. Washington, 466 U.S. at 696, 104 S. Ct. at 2069.  The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process.  Id.

Any counsel errors must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or jury.'"  Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (quoting Strickland v. Washington, 466 U.S. at 695-96, 104 S. Ct. at 2069); accord, e.g., Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991).  "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  Harrington v. Richter 131 S. Ct. at 788; see also, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403 ("The [Supreme] Court acknowledged that '[t]here are countless ways to provide effective assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'").

---

[31]     (...continued)
988, 998 (1986) ("[A] defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under Strickland."); Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.").  Rather, the phrase "reasonable probability" seems to describe a fairly low standard of probability, albeit somewhat more likely than a "reasonable possibility." Strickler v. Greene, 527 U.S. at 291, 119 S. Ct. at 1953; cf. id. at 297-301, 119 S. Ct. at 1955-58 (Souter, J., concurring & dissenting) (arguing that any difference between "reasonable probability" and "reasonable possibility" is "slight").

The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  Strickland v. Washington, 466 U.S. at 697, 104 S. Ct. at 2069.[32]

In addition, the Supreme Court has counseled that:

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable;  and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . . In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland v. Washington, 466 U.S. at 690-91, 104 S. Ct. at 2066.[33]

"The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard."  Lindstadt v. Keane, 239 F.3d

---

[32]   Accord, e.g., Smith v. Robbins, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 764 n.14 (2000); Santone v. Fischer, 689 F.3d 138, 154 (2d Cir.) (ineffective assistance "'claim[s] must be rejected if the defendant fails to meet either the performance prong or the prejudice prong'"), cert. denied, 133 S. Ct. 390 (2012).

[33]   See also, e.g., Harrington v. Richter, 131 S. Ct. at 789-90 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."  Moreover, an "attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense."); Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003); Engle v. Isaac, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."); Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998) ("In reviewing Strickland claims, courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy. We are also instructed, when reviewing decisions by counsel, not to 'second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every "colorable" claim' on appeal." (citations omitted)); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.) (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices"), cert. denied, 513 U.S. 820, 115 S. Ct. 81 (1994).

at 199; accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403 ("We take a 'highly deferential' look at counsel's performance."); Bierenbaum v. Graham, 607 F.3d at 50-51; Bell v. Miller, 500 F.3d at 156-57.  "'Surmounting Strickland's high bar is never an easy task.'"  Harrington v. Richter, 131 S. Ct. at 788 ("[T]he Strickland standard must be applied with scrupulous care" and "the standard for judging counsel's representation is a most deferential one.").

### 2.   Strickland and the AEDPA Review Standard

For purposes of this Court's AEDPA analysis, "the Strickland standard . . . is the relevant 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Aparicio v. Artuz, 269 F.3d 78, 95 & n.8 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(d)(1)).[34/]  "For AEDPA purposes, a petitioner is not required to further demonstrate that his particular theory of ineffective assistance of counsel is also 'clearly established.'"  Aparicio v. Artuz, 269 F.3d at 95 n.8.

Under AEDPA and Strickland, review is doubly deferential:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (citations omitted); accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403 ("Our review . . . is thus 'doubly deferential.'"); Premo v. Moore, 131

---

[34/]   See also, e.g., Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011); Premo v. Moore, 131 S. Ct. 733, 743 (2011); Wiggins v. Smith, 539 U.S. 510, 521-22, 123 S. Ct. 2527, 2535 (2003); Bell v. Cone, 535 U.S. 685, 698, 122 S. Ct. 1843, 1852 (2002); Cornell v. Kirkpatrick, 665 F.3d 369, 374-75 (2d Cir. 2011); Mosby v. Senkowski, 470 F.3d 515, 518-19 (2d Cir. 2006), cert. denied, 552 U.S. 836, 128 S. Ct. 75 (2007); Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).

S. Ct. at 740-41; Bell v. Cone, 535 U.S. at 698-99, 122 S. Ct. at 1852 ("For [petitioner] to succeed, however, he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, he must show that the [state appellate court] applied Strickland to the facts of his case in an objectively unreasonable manner." (citation omitted)); see also, e.g., Yarborough v. Gentry, 540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003); Santone v. Fischer, 689 F.3d 138, 154 (2d Cir.) ("'[T]he pivotal question' for the federal habeas court 'is whether the state court's application of the Strickland standard was unreasonable.'"), cert. denied, 133 S. Ct. 390 (2012); Mosby v. Senkowski, 470 F.3d at 519.

### B.    Application to Gordon's Claim

Gordon argues that his trial counsel was ineffective for failing to request a jury charge on the affirmative defense to first degree robbery that the gun was unloaded.  (See pages 9-10 above.) The First Department stated that Gordon "testified and denied any involvement in the robbery, and his defense was based entirely on issues of identification and credibility."  (See pages 8-9 above.)  The First Department found that, to the extent the record permitted review, "it was a plausible strategy to focus exclusively on the issue of misidentification."  (See page 9 above.)

The decision whether to assert an affirmative defense is a matter of trial strategy that generally will not be second-guessed by a reviewing court.  See, e.g., Smith v. Green, 05 Civ. 7849, 2006 WL 1997476 at *12-13 (S.D.N.Y. July 18, 2006) (Chin, D.J.); Powell v. United States, No. 99-CV-0365, 2000 WL 1047810 at *5 (W.D.N.Y. July 26, 2000).  This is especially true when the affirmative defense potentially would undermine the defense offered at trial, i.e., here, the mis-identification defense.  See, e.g., Hernandez v. Larkin, 12 Civ. 8090, 2013 WL 4453316 at *15 (S.D.N.Y. Aug. 19, 2013); Clarke v. Yellech, 09 Civ. 8218, 2010 WL 2772343 at *7 (S.D.N.Y. July

9, 2010), report & rec. adopted, 2010 WL 3155030 (S.D.N.Y. Aug. 9, 2010); Samuels v. Bennett, 03

Civ. 2340, 2009 WL 2516850 at *24 (S.D.N.Y. Aug. 17, 2009) (reasonable strategy to not argue for

lesser offense when "could have reduced the persuasiveness of [petitioner's] misidentification

defense"); Shields v. Duncan, No. 02-CV-6713, 2003 WL 22957008 at *16 (E.D.N.Y. Oct. 20, 2003)

(Weinstein, D.J.) ("Counsel cannot be faulted for opting for the theory that had the most chance of

success and for wanting to avoid, as a matter of trial strategy, the presentation of inconsistent

defenses.").  With respect to the affirmative defense at issue here, "the defense of inoperability of the

weapon is intended to lessen the degree of criminality, but it necessarily presupposes the commission

of the crime.  When a defendant claims that he has been misidentified, such a charge does not serve

its ameliorative purpose, but, rather, deflects from his protestations of innocence."   People v.

Maldonado, 175 A.D.2d 698, 700, 573 N.Y.S.2d 662, 663-64 (1st Dep't 1991); accord, e.g., People

v. Stokes, 25 A.D.3d 332, 333, 808 N.Y.S.2d 637, 637 (1st Dep't) ("[U]se of the affirmative defense

under Penal Law § 160.15(4) poses the danger of undermining a defendant's misidentification

defense." (citing People v. Maldonado, 175 A.D.2d at 700, 573 N.Y.S.2d at 663-64)), appeal denied,

6 N.Y.3d 839, 814 N.Y.S.2d 87 (2006).

Here, Gordon's counsel asserted a misidentification defense at trial.  (See pages 5-6

above.)  Gordon's counsel highlighted inconsistencies between the victim's description of the suspect

and Gordon's appearance upon arrest, and that Gordon did not have the gun in his possession when

he was arrested.  (See page 5-6 above.)  Gordon testified that he was not involved in any robbery that

night and had not been wearing a baseball cap and never wore gold teeth.  (See page 5 above.)

Gordon's counsel argued in his summation that the prosecution's case was based on mistakes, namely

that Gordon's sweatshirt had been described as "dark" and "black" when in fact it was brown and that

his bike was described as gray or silver but actually was black.  (Tr. 705-08, 710, 712, 714-15, 725-26; see page 6 above.)

It is impossible to determine from Gordon's trial counsel's colloquy with Justice Wittner whether counsel agreed with the judge that to support the affirmative defense, Gordon would have to admit that he had the gun but it that was unloaded.  (See page 7 above.)  Gordon's counsel's response to Justice Wittner was ambiguous—"I understand.  I don't think that would necessarily be applicable in this case."  (See page 7 above.)  Trial counsel may have been disagreeing with the judge that Gordon would have had to admit to having the gun, or he may have been stating that he did not want the affirmative defense in this case.  Despite Gordon's claim that the latter is clear from the transcript (see Dkt. No. 3: Gordon Br. at 28; Dkt. No. 13: Gordon Reply Br. at 7-8), the First Department found the "sparse record" to be "inconclusive."  (See page 9 above.)  This Court cannot say that the First Department's factual/legal determination was unreasonable.

Gordon also claims that trial counsel must have misunderstood the law in declining the affirmative defense since counsel "made a motion to dismiss on the exact same grounds underpinning the affirmative defense."  (Gordon Br. at 22-23; see page 6 above.)  A motion to the court is very different than an alternative (and inconsistent, see Gordon Br. at 27), argument before the jury.  As the First Department found, "it was a plausible strategy to focus exclusively on the issue of misidentification."  (See page 9 above, emphasis added.)

Of course, Gordon might be correct that his trial counsel was mistaken as to the need for Gordon to admit to the gun (and hence to second degree robbery) in order to support the affirmative defense to first degree robbery.  Gordon can pursue that argument in a § 440 motion in state court.  But the record before this Court is insufficient to so hold, especially under the Strickland-AEDPA double-deference standard.

Accordingly, the First Department's alternative decision to deny Gordon's ineffective assistance claim was neither contrary to nor an unreasonable application of Supreme Court precedent.

## CONCLUSION

For the reasons discussed above, Gordon's habeas petition (Dkt. No. 2) should be DENIED in its entirety and a certificate of appealability should not be issued.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Andrew L. Carter, Jr., 40 Foley Square, Room 435, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Carter (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.),

cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992);  Small v. Sec'y of Health & Human Servs., 892

F.2d 15, 16 (2d Cir. 1989);  Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);  McCarthy

v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).


Dated:        New York, New York
              March 6, 2014


                                   Respectfully submitted,

                                   _____
                                   **Andrew J. Peck**
                                   United States Magistrate Judge


Copies ECF to:        All Counsel
                      Judge Andrew L. Carter, Jr.